UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CATHERINE MONROE, individually and on behalf of all others similarly situated, | § § § |
| Plaintiff, | § § § |
| vs. | § § § Civil Action No. |
| ASSETCARE LLC; CF MEDICAL LLC; and JOHN DOES, | § § § § |
| Defendants. | § § § |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT, AND DEMAND FOR JURY TRIAL**

Plaintiff, CATHERINE MONROE, individually and on behalf of all others similarly situated, by way of this Complaint against Defendant, ASSETCARE LLC ("ASSETCARE"), CF MEDICAL LLC ("CF MEDICAL") and JOHN DOES ("DOES"), states:

### I.    NATURE OF THE ACTION

1. Plaintiff brings this action against Defendants for unlawful debt collection practices in connection with the attempt to collect an alleged debt. Plaintiff claims Defendants violated, *inter alia*, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* and the Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq.*, by offering to settle a debt without disclosing that the debt was no longer judicially enforceable because the statute of limitations had run. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016). Plaintiff also claims Defendants violated the

2. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress found abundant evidence of the use of

abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a)-(e).

3. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc*., 687 F.3d 665 (5th Cir. 2012).

4. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

5. To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

6. The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and deceptive practices Acts).

7. Plaintiff, individually and on behalf of all others similarly situated, seeks statutory damages, actual damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCA, and all other common law or statutory regimes.

## II.   PARTIES

8. MONROE is a natural person.

9. At all times relevant to the factual allegations of this Complaint, MONROE was a citizen of, and resided in, the City of Katy, Fort Bend County, Texas.

10. At all times relevant to the factual allegations of this Complaint, ASSETCARE was a limited liability company existing pursuant to the laws of the State of Texas.

11. On information and belief, ASSETCARE maintains its principal place of business at 2222 Texoma Parkway, Suite 1800, Sherman, Texas 75090.

12. At all times relevant to the factual allegations of this Complaint, CF MEDICAL was a limited liability company existing pursuant to the laws of the State of Nevada.

13. On information and belief, CF MEDICAL maintains its principal place of business at 4730 South Fort Apache Road, Suite 300, Las Vegas Nevada 89147.

14. DOES are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

15. Plaintiff is informed and believes, and on that basis alleges, that Defendants DOES are natural persons and/or business entities all of whom reside or are located within the United States.

16. Plaintiff is informed and believes, and on that basis alleges, that Defendants DOES personally created, instituted, and oversaw the policies and procedures used by the employees of ASSETCARE and CF MEDICAL, that are the subject of this Complaint. Knowing those policies and procedures were contrary to law, those Defendants are personally liable for all of the wrongdoing alleged in this Complaint.

### III. JURISDICTION AND VENUE

17. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 & 1337.

18. Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

19. Declaratory relief is available pursuant 28 U.S.C. §§ 2201, 2202.

20. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because ASSETCARE and CF MEDICAL are each subject to personal jurisdiction in the State of Texas at the time this action was commenced.

### IV. FACTS

21. CF MEDICAL collects, and attempts to collect, defaulted consumer medical debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

22. In connection with its debt servicing operations, CF MEDICAL routinely hires other debt collectors, such as ASSETCARE, to send dunning letters to consumers in an effort to

collect money on the defaulted consumer medical debts CF MEDICAL acquires.

23. ASSETCARE regularly uses the U.S. Mail, telephone and Internet to collect, and attempt to collect, on behalf of third-parties, defaulted debts that were incurred, or are alleged to have been incurred, for personal, family, or household purposes.

24. ASSETCARE mailed or caused to be mailed a letter dated January 16, 2019 (the "Letter") to MONROE.

25. A true and correct copy of the Letter is attached as ***Exhibit A***, except portions have been partially redacted.

26. CF MEDICAL reviewed the form of the Letter before it was sent to MONROE.

27. CF MEDICAL approved the form of the Letter before it was sent to MONROE.

28. CF MEDICAL had the right to review and approve the form of the Letter before it was sent to MONROE.

29. The Letter alleged MONROE had incurred and defaulted on a financial obligation incurred for medical treatment for her minor child (the "Debt"), which CF MEDICAL had purchased.

30. On information and belief, sometime prior to January 16, 2019, CF MEDICAL, either directly or through intermediate transactions assigned, placed, or transferred the Debt to ASSETCARE for collection.

31. The alleged Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transactions were primarily for personal, family, or household purposes, namely medical treatment for Plaintiff's minor child.

***Offering to Settle on a Time-Barred Debt***

32. The Letter sought to collect for medical services rendered on April 22, 2014, more than four years prior to the date of the Letter.

33. The statute of limitations on debt in Texas is four years. Tex. Civ. Prac. & Rem. Code § 16.004.

34. The Letter did not disclose that the Debt was no longer enforceable by means of a lawsuit.

35. The Letter offered to settle the Debt for 50% of the balance owed, provided ASSETCARE received the settlement payment no later than January 29, 2019.

36. A collection letter, seeking payment on a time-barred debt without disclosing its unenforceability, and offering a "settlement" and inviting partial payment without disclosing partial payment might restart the statute of limitations, is deceptive and misleading to the unsophisticated consumer. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016).

37. The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (*See* http://www.ftc.gov/opa/2012/01/asset.shtm).

38. In early 2012, the FTC entered into a consent decree with Asset Acceptance requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

39. On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three

American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

40. The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose material information may be misleading.

41. On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

42. The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

43. ASSETCARE's use of a form letter like the Letter—which fails to disclose that a debt is no longer judicially enforceable and that a partial payment could restart the statute of limitations—competitively disadvantages debt collectors who collect debts who do disclose that

a debt is no longer judicially enforceable and that a partial payment could restart the statute of limitations.

### *Falsely Suggesting the Settlement Offer Was a One-Time Take-It-Or-Leave It Offer*

44. The Letter falsely suggests to the unsophisticated consumer that the 50% settlement offer was a one-time take-it-or-leave-it offer.

45. The Letter's false suggestion arises from the totality of the Letter including, but not limited to the following language:

> We have been authorized to extend to you a *special* offer to resolve this account for $305.34. This offer will save you 50%. If you choose to accept this offer, payment *must* be received in this office on or before 01/29/2019. (emphasis added)

46. In fact, CF MEDICAL and ASSETCARE were willing to extend the offer to settle for 50% of the balance due after January 29, 2019.

47. On information and belief, CF MEDICAL and ASSETCARE would have accepted less than 50% of the balance owed at any time to settle the Debt.

48. The Letter is materially false, deceptive, and misleading to an unsophisticated consumer. *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495-496 (5th Cir. 2004).

49. Consumers must often make difficult decisions about how to use scarce financial resources. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 368 (7th Cir. 2018).

50. A rational person with limited financial resources would, based on the Letter, choose to pay the Debt over an otherwise identical debt in which the collection letter did not falsely imply that the settlement offer was a one-time take-it-or-leave-it offer.

51. ASSETCARE's use of a form letter like the Letter—which falsely implies the settlement offer will not be renewed—competitively disadvantages debt collectors who collect debts who do not falsely imply that a settlement offer will not be renewed.

52. A rational person with limited financial resources would, based on the Letter, choose to pay the Debt over an otherwise identical debt in which the collection letter did disclose that the debt was no longer judicially enforceable and that a partial payment might restart the statute of limitations.

53. The Letter deprived MONROE of truthful, non-misleading, information in connection with Defendants' attempt to collect a debt.

54. On information and belief, the Letter was created by merging information specific to a debt and consumer with a template to create what is commonly called a "form letter."

55. Consequently, on information and belief, ASSETCARE caused the same form collection letter to be mailed to others who, like MONROE, reside in Texas.

## V.   CLASS ALLEGATIONS

56. Defendants' conduct toward MONROE is consistent with their policies and practices when attempting to collect debts from consumers generally. Consequently, this action is brought by MONROE individually and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57. MONROE seeks to certify a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

58. ***Class Definition.*** The Class consists of all natural persons to whom ASSETCARE mailed a written communication on behalf of CF MEDICAL in the form of *Exhibit A* to an address in the State of Texas between December 31, 2018 and January 21, 2020.

59. The identities of the Class members are readily ascertainable from the business records of Defendant and those entities on whose behalf Defendant attempted to collect debts.

60. ***Class Claims.*** The Class claims include all claims each Class member may have for a violation of the FDCPA and TDCA arising from ASSETCARE having mailed a written communication on behalf of CF MEDICAL in the form of *Exhibit A* to such Class member.

61. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

62. ***Numerosity.*** On information and belief, the Class is so numerous that joinder of all members would be impractical and includes at least 40 members.

63. ***Common Questions Predominate.*** Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members because such questions and issues concern the same conduct by Defendants with respect to each Class member.

64. ***Typicality.*** MONROE's claims are typical of Class because those claims arise from a common course of conduct engaged in by Defendants.

65. ***Adequacy.*** MONROE will fairly and adequately protect the interests of the Class members because he has no interests adverse to the interests of the Class members. Moreover, MONROE is committed to vigorously litigating this matter and retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither MONROE nor her counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

66. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to the Class members predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Based on discovery and further investigation (including, but not limited to, disclosure by Defendants of class size and net worth), MONROE may, in addition to moving for class certification using modified definitions of the Class and/or Class claims, and the Class period,

seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

### VI.    COUNT ONE: VIOLATION OF THE FDCPA.

67. The preceding facts about Defendants and Plaintiff are incorporated by reference.

68. ASSETCARE is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

69. CF MEDICAL is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

70. CF MEDICAL is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

71. DOES are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

72. The Debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

73. MONROE is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

74. The Letter was a "communication" within the meaning of 15 U.S.C. § 1692a(2).

75. Defendants failed to comply with the FDCPA with respect to Plaintiff. Such failure includes, but is not limited to:

    (a) Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

    (b) Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    (c) Making false threats to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §§1692e and 1692e(5);

    (d) Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

    (e) Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f.

76. The conduct of Defendants invaded the rights of Plaintiff that are protected by the FDCPA, the invasion of which caused injury-in-fact.

77. Based on a single violation of the FDCPA, Defendants are liable to Plaintiff for such relief as is allowed under 15 U.S.C. § 1692k.

### VII.  COUNT TWO: VIOLATION OF THE TDCA

78. The preceding facts about Defendants and Plaintiff are incorporated by reference.

79. ASSETCARE is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(6).

80. ASSETCARE is a "Third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

81. ASSETCARE is engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

82. CF MEDICAL is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(6).

83. CF MEDICAL is a "Third-party debt collector" within the meaning of Tex. Fin. Code § 392.001(7).

84. CF MEDICAL is engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

85. The Debt is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

86. MONROE is a "consumer" within the meaning of Tex. Fin. Code § 392.001(1).

87. Defendants violated Tex. Fin. Code § 392.304(a)(8) by sending written communications, in the form attached as *Exhibit A*, that misrepresent the character, extent, or amount of a consumer debt and whether a legal obligation exists for the consumer to pay it.

88. Defendants violated Tex. Fin. Code § 392.304(a)(19) by sending written

communications, in the form attached as *Exhibit A*, that use false, deceptive, and misleading representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

### VIII.  PRAYER FOR RELIEF.

73. WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

*A. With respect to Count One:*

74. Certifying this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23 including defining the Class, defining the class claims, and appointing Plaintiff's attorneys as class counsel;

75. Awarding such actual damages as may be proven to Plaintiff and to the members of the Class pursuant to 15 U.S.C. § 1692k(a)(1);

76. Awarding statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

77. Awarding of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

78. An incentive award for Plaintiff, in connection with her services to the Class in an amount to be determined by the Court after judgment is entered in favor of the Class;

79. Adjudging this action to be a successful action under 15 U.S.C. § 1692k(a)(2)(B)(3) and awarding reasonable attorneys' fees including litigation expenses;

80. Awarding costs of suit as allowed by law;

81. Awarding actual damages to Plaintiff and the Class to the extent the recovery of reasonable attorneys' fees and costs cause Plaintiff or the Class a negative tax consequence; and

82. For such other and further relief as may be just and proper.

B. *With respect to Count Two:*

82. Certifying this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing Plaintiff's attorneys as class counsel;

83. Awarding injunctive relief to prevent or restrain Defendants' further violations of Chapter 392 of the Texas Finance Code pursuant to Tex. Fin. Code § 392.403(a)(1);

84. Awarding such actual damages as may be proven to Plaintiff and members of the Class pursuant to Tex. Fin. Code § 392.403(a)(2);

85. An incentive award for Plaintiff, in connection with her services to the Class in an amount to be determined by the Court after judgment is entered in favor of the Class;

86. Adjudging Plaintiff to have successfully maintained an action under Tex. Fin. Code § 392.403(a), and awarding reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403(b);

87. Awarding actual damages to Plaintiff and the Class to the extent the recovery of reasonable attorneys' fees and costs cause Plaintiff or the Class a negative tax consequence; and

88. For such other and further relief as may be just and proper.

## IX.   JURY DEMAND.

89. Demand is hereby made for trial by jury.

Respectfully submitted,

*s/ Andrew T. Thomasson*
Andrew T. Thomasson, Attorney-in-Charge

Dated:  December 31, 2019

    NJ Bar No. 048362011; SDTX No. 2347873
Philip D. Stern
    NJ Bar No. 045921984; SDTX No. 3063738
Francis R. Greene
    IL Bar No. 6272313; SDTX No. 2580087
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
E-Mail: andrew@sternthomasson.com
E-Mail: philip@sternthomasson.com
E-Mail: francis@sternthomasson.com

Daniel J. Ciment
    TX Bar No. 24042581
CIMENT LAW FIRM, PLLC
24275 Katy Freeway, Suite 400
Katy, TX 77494
Telephone: (833) 663-3289
E-Mail: Daniel@CimentLawFirm.com

*Attorneys for Plaintiff, Catherine Monroe*