## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CATHERINE MONROE, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| *vs.* | § § | Civil Action No. 4:19-cv-05039 |
| ASSETCARE LLC; CF MEDICAL LLC; and JOHN DOES, | § § § | |
| Defendants. | § § | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
## OF THE PARTIES' CLASS SETTLEMENT AGREEMENT

Plaintiff, Catherine Monroe, individually and on behalf of all others similarly situated, on consent of Defendants, AssetCare LLC ("AssetCare") and CF Medical LLC, ("CF Medical") respectfully submits this Motion for Final Approval of the Parties' Class Settlement Agreement ("Agreement" or "Settlement") pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3).

### I.    INTRODUCTION

Plaintiff achieved a valuable settlement for Class Members. The Settlement provides significant protections for Class Members, including Defendants' agreement to: (i) consider all Class Member accounts disputed; (ii) permanently waive the entire balances owed; (iii) suppress the filing/reporting of a 1099-C form; (iv) never sell, assign, or subject the account(s) to further collection activity; (v) delete all Class Members' negative tradelines from each credit reporting agencies to whom they were reporting Class Members' account(s); and (vi) to the Court's entry of a mandatory injunction requiring them to include a prominent disclaimer on their collection letters when seeking payment of a time-barred debt from Texas consumers. *The total value of Class Members' debt waiver is $41.2 million* and Subclass Members who returned a claim form will receive direct payments of $30.00.

In short, the Settlement represents an important victory for Texas residents in the sphere of enforcing their state and federal consumer rights.

On October 22, 2020, the Court preliminarily approved the Settlement and conditionally certified the settlement class under Federal Rule of Civil Procedure 23(b)(2) and (3) [Doc. 42], as amended on November 5, 2020 [Doc. 44]. Because the Settlement is a fair, reasonable, and adequate result for Class Members, the Court should now grant final approval.

## II.    RELEVANT OVERVIEW OF THE CASE

### A. *Factual and Procedural History.*

On December 31, 2019, Plaintiff, individually and on behalf of a class, filed this lawsuit (the "Litigation"). [Doc. 1.] Plaintiff is a Texas consumer, employed as a first-grade teacher in Katy, Texas, who allegedly incurred a debt for personal medical services ("Debt") rendered to her minor child on April 22, 2014. *Id.* AssetCare is a Texas based debt collector who collects defaulted medical debts on behalf of CF Medical, a purchaser of defaulted medical debts. *Id.*

Sometime after April 2014, the Debt was sold by its creditor to CF Medical who, in turn, placed it with AssetCare for collection. *Id.* AssetCare mailed Ms. Monroe a collection letter dated January 16, 2019 ("Letter") to collect the Debt. Ms. Monroe contends the Letter made a deceptive limited time "settlement offer" to resolve Debt when it was no longer judicially enforceable because the statute of limitations for filing a lawsuit had already run. *Id.*

The Litigation alleges Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* and Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq.*, by making deceptive, limited time, settlement offers to Plaintiff and other Texas consumers without disclosing their medical debts, now owned by CF Medical, were no longer judicially enforceable because the statute of limitations to file a lawsuit had passed. *Id.*

On February 25, 2020, Defendants each filed an Answer with Affirmative Defenses to the Complaint denying they violated the FDCPA and TDCA, as well as denying all liability to

Plaintiff and the Settlement Class. [Docs. 10 and 12.] Since the outset, the Parties engaged in extensive arms-length settlement discussions, which intensified as discovery progressed.

On March 17, 2020, the Parties conducted their Rule 26(f) Planning Conference, and on March 20, 2020, filed their Joint Discovery/Case Management Plan. [Doc. 17.] On March 23, 2020, Plaintiff served her Mandatory Initial Discovery Responses [Doc. 19] and, on March 27, 2020, Defendants served their Mandatory Initial Discovery Responses [Docs. 20 and 21].

On April 7, 2020, the Parties each served initial sets of written discovery which included Interrogatories, Requests for Production, and Requests for Admission and, on May 12, 2020, Plaintiff served each Defendant with a second set of written discovery requests. The Parties responded to written discovery and began scheduling party and non-party witness depositions.

On May 21, 2020, the Court conducted its Rule 16 Conference and entered a Scheduling Order setting deadline for completing discovery, Defendants' dispositive motions, and Plaintiff's class certification motion. [Docs. 25 and 26.]

On June 23, 2020, the Parties personally appeared for, and engaged in, private mediation (via Zoom conferencing) which lasted approximately 10 hours. The Parties did not settle at mediation, but they made good progress towards settlement and, therefore, continued their extensive settlement discussions for several weeks thereafter. In furtherance of those discussions, on July 9, 2020, the Parties filed a Joint Motion to Extend the Discovery and Dispositive Motion Deadlines [Doc. 30], which the Court granted on July 10, 2020 [Doc. 31].

The Parties' negotiations continued while they pursued remaining discovery, prepared for dispositive motions and Plaintiff's class certification motion. On August 14, 2020, each raised discovery disputes [Doc. 32] and a hearing was scheduled for August 27, 2020 [Doc. 33]. They resolved their discovery dispute after agreeing on material terms of a class settlement.

In sum, the Parties extensively investigated and analyzed the legal and factual issues in the case and engaged in extensive arms-length settlement negotiations lasting several months and

including a 10-hour mediation. Based on information obtained through discovery and investigation, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages more than those obtained through this Settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals, the negotiations led to the Agreement [Doc. 39-2 (Appdx. A)] settling this case, subject to the Court's approval.

On October 22, 2020, the Court preliminarily approved the Settlement and conditionally certified the settlement class under Fed. R. Civ. P. 23(b)(2) and (3) [Doc. 42], as amended on November 5, 2020 [Doc. 44] ("Order"), defined as:

> All natural persons to whom AssetCare LLC mailed a letter to an address in the State of Texas between December 31, 2017 and January 21, 2020, which sought to collect a debt on behalf of CF Medical LLC, and offered a settlement of a debt on which the last payment or activity had occurred more than four years prior to the date of the letter without disclosing the debt was no longer legally enforceable.

The Order also certified a Subclass defined as:

> All Settlement Class members whose letter was mailed between December 31, 2018 and January 21, 2020.

**B.  *Summary of the Settlement Terms.***

The Agreement includes equitable relief to Class Members ("Class Recovery"), monetary relief to Subclass Members ("Subclass Recovery") and Plaintiff, attorneys' fees, and releases. More particularly, the Agreement provides the following:

(i)   ***Class Recovery—Deletion of Credit Reporting Tradelines***. Defendants represented that, as of August 28, 2020, they requested deletion of all tradelines concerning Class Members' CF Medical accounts that are the subject of this Lawsuit from any credit reporting agency to whom they were reporting one or more of Class Members' accounts AssetCare was collecting. [*Agreement*, ¶11(a).]

(ii)  ***Class Recovery—Waiver of Debts***. Within seven (7) days of the Court's entry of an Order granting final approval of the Settlement, CF Medical will: (i) consider each Class Members' account(s) that are the subject of this Lawsuit as disputed; (ii) permanently waive the entire balance owed for each Class Members' account(s) that are the subject of this Lawsuit; (iii) suppress the filing/reporting of a 1099-C

form for all Class Members' account(s) that are the subject of this Lawsuit; and (iv) never sell, assign, or subject to further collection activity any Class Members' account(s) that are the subject of this Lawsuit. The total value of the Class Members' debt waiver is $41.2 million. [*Id.* at ¶11(b).]

(iii)  ***Class Recovery—Injunctive Relief***. As a non-monetary part of the settlement, Defendants will submit to the Court's entry of a mandatory injunction providing that, on a going-forward basis, they shall provide the following notices in written communications seeking payment on a time-barred debt owed to CF Medical from consumers who have Texas addresses:

(1)  If the reporting period for including the consumer debt in a consumer report prepared by a consumer reporting agency has not expired under Section 605 of the Fair Credit Reporting Act (15 U.S.C. § 1681c), and CF Medical furnishes to a consumer reporting agency information regarding the consumer debt:

"THE LAW LIMITS HOW LONG YOU CAN BE SUED ON A DEBT. BECAUSE OF THE AGE OF YOUR DEBT, WE WILL NOT SUE YOU FOR IT. IF YOU DO NOT PAY THE DEBT, CF MEDICAL LLC MAY CONTINUE TO REPORT IT TO CREDIT REPORTING AGENCIES AS UNPAID FOR AS LONG AS THE LAW PERMITS THIS REPORTING. THIS NOTICE IS REQUIRED BY LAW."

(2)  If the reporting period for including the consumer debt in a consumer report prepared by a consumer reporting agency has not expired under Section 605 of the Fair Credit Reporting Act (15 U.S.C. § 1681c), but CF Medical does not furnish to a consumer reporting agency information regarding the consumer debt,

"THE LAW LIMITS HOW LONG YOU CAN BE SUED ON A DEBT. BECAUSE OF THE AGE OF YOUR DEBT, WE WILL NOT SUE YOU FOR IT. THIS NOTICE IS REQUIRED BY LAW."

(3)  If the reporting period for including the consumer debt in a consumer report prepared by a consumer reporting agency has expired under Section 605 of the Fair Credit Reporting Act (15 U.S.C. §1681c),

"THE LAW LIMITS HOW LONG YOU CAN BE SUED ON A DEBT. BECAUSE OF THE AGE OF YOUR DEBT, WE WILL NOT SUE YOU FOR IT, AND WE WILL NOT REPORT IT TO ANY CREDIT REPORTING AGENCY. THIS NOTICE IS REQUIRED BY LAW."

[*Id.* at ¶ 11(c)(i)-(iii).]

A notice required under the foregoing provisions must be in at least 12-point type that is boldfaced, capitalized, or underlined or otherwise conspicuously set out from the surrounding written material. Such disclosure shall be made until and unless the TDCA provision Tex. Fin. Code § 392.307 providing for said language is amended, struck, or revised, or overruled or preempted by case law, statute or regulatory guidance.

(iv) **Subclass Recovery.** Defendants will create a class settlement fund of $100,000.00 ("Class Recovery"), that a Third-Party Settlement Administrator ("Administrator") will distribute *pro rata* (up to $30.00) to each Subclass Member who timely returns a claim form and does not exclude him/herself from the Settlement. Subclass Members will receive their share of the Class Recovery by check which will be void 120 days from the date of issuance. [*Id.* at ¶ 11(d).]

(v) **Subclass Recovery—Residual**. Any Subclass Recovery checks not cashed by the void date, along with any unclaimed funds remaining in the Subclass Recovery, will be disbursed in the following order: (i) to pay the costs associated with providing Notice to Class Members and administering the Subclass Recovery; and (ii) any remainder donated as a *cy pres* award to the Texas Access to Justice Foundation, who provides *pro bono* legal services to low-income Texans who would otherwise be denied access to justice. *Id.*

(vi) **Relief to Plaintiff**. Subject to Court approval, Defendants agreed to pay Plaintiff $1,000.00 for her statutory damages under 15 U.S.C. § 1692k(a)(2)(B), plus an additional $5,000.00 as consideration for her service to the Class. [*Id.* at ¶11(e).]

(vii) **Class Counsel Fees & Costs**. Subject to Court approval, Defendants also agreed to pay Plaintiff's reasonable attorneys' fees and costs incurred in the prosecution of a "successful action" under 15 U.S.C. § 1692k and Tex. Fin. Code § 392.403(b) notwithstanding their denial of liability. [*Id.* at ¶ 12]. Subject to court approval, Defendants agreed Class Counsel shall be entitled to receive $100,000.00, which covers all fees and expenses arising out of the Litigation, and does not in any way reduce, the Settlement benefits or amounts provided to the Settlement Class. *Id.*

### C. Notice to Class Members was Effected Just as the Court Instructed.

In accordance with the Order, Heffler Claims Group, the Administrator, caused actual notice to be sent on November 20, 2020, by first class mail to each of the 28,569 Class Members of which 2,350 were returned by the United States Postal Service as undeliverable. The Third-Party Settlement Administrator obtained forwarding addresses for 893 and successfully re-mail the notices. [*Appx. 1*, *Radetich Decl.*, ¶¶4-12.].

Still, no Class Members have objected to, or sought exclusion from, the Settlement. [*Id.* at ¶¶11-12; *Appx. 2*, *Thomasson Decl.* ¶11; *Appx. 3*, *Ciment Decl.* ¶7.] Nor were any objections made by the Texas or United States Attorneys General who received notice under the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b). [*Doc. 40 & 46*; *Appx. 2*, ¶12; *Appx. 3*, ¶7.]

## III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

Final approval requires the Court to resolve three fundamental issues. First, whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Second, whether the settlement agreement is fair, adequate and reasonable, and was not the product of collusion. Fed. R. Civ. P. 23(e)(2); *Cotton*, 559 F.2d at 1330. Third, whether the attorney's fees proposed in the settlement agreement are reasonable. *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).

"Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

### A.    *The Class Meets All the Requirements of Fed. R. Civ. P. 23(a).*
#### (i)        *Rule 23(a)(1) - Numerosity.*

Fed. R. Civ. P. 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable." A class of 100 to 150 members is within the range that generally satisfies the numerosity requirement. *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted). Here, the Class having 28,569 members, including 9,545 Subclass Members, satisfies numerosity.

#### (ii)        *Rule 23(a)(2) - Commonality.*

Commonality under Rule 23(a)(2) requires "a common contention" which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As long as there is at least one issue of law or fact that will affect all or a significant number of the putative class members, the requirement is met. *Mullen*, 186 F.3d at 625; *Forbush v. J.C. Penney Co. Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

The common issues of fact exist because Defendants mailed Plaintiff and each Class Member the same *standardized* form collection Letter to collect defaulted medical debts owed to CF Medical which allegedly made false limited time "settlement offers" to resolve their debts without disclosing the debts were no longer judicially enforceable because the statute of

limitations to file a lawsuit had passed. There are common questions law as to whether the content of those Letters violate the same statutory schemes—*i.e.*, the FDCPA and TDCA.

### (iii)    *Rule 23(a)(3) – Typicality.*

The claims of the class representative must be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The test for typicality, like commonality, is not demanding. *Forbush*, 994 F.2d at 1106. A plaintiff's claims are typical if they "arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory." *Durrett v. John Deere Co*., 150 F.R.D. 555, 558 (N.D. Tex. 1993) (typicality exists where the named plaintiff and class members' claims are "all arising out of the same form contract").

Here, typicality is inherent in the Class definition which provides that Defendants mailed Plaintiff and each Class Member the same *standardized* form collection Letter which allegedly violated the TDCA and FDCPA in the same manner. Further, Defendants' form collection Letter is judged using an objective standard and, thus, a single analysis is dispositive of all Class Members' claims—*i.e.*, if the Letter is found misleading for Plaintiff, then it is misleading for everyone. Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

### (iv)    *Rule 23(a)(4) - Adequacy.*

Fed. R. Civ. P. 23(a)(4) requires named plaintiffs to provide fair and adequate protection for the interests of the class. Adequacy "encompasses three separate but related inquiries (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (citations omitted). These requirements continue to be met here.

 Regarding the first inquiry, Plaintiff's counsel are experienced in class action and complex consumer litigation. [*See*, Declarations of Andrew T. Thomasson (*Appx. 2*, ¶¶1-6) and

Daniel J. Ciment (*Appx. 3*, ¶¶1-5)]. Additionally, the Settlement relief itself—comprised of equitable benefits not available under the TDCA or FDCPA, along with damages and injunctive relief—speaks to the "the zeal and competence" of Plaintiff's counsel.

Regarding the second inquiry, Plaintiff has for more than a year demonstrated her "willingness and ability…to take an active role in and control the litigation and to protect the interests of absentees." She has been actively involved at every stage of this litigation to advance the putative class members' claims, protect their interests. [*Appx. 2*, ¶¶7-9; *Appx. 3*, ¶6.] By way of example, she fully and timely responded to all Defendants' written discovery requests and promptly agreed to appear for deposition on every date they proposed. *Id.* She also actively participated in a full day of mediation and met with her attorneys prior to the mediation, immediately afterwards, and several times after regarding ongoing class settlement negotiations; she also remained in touch with her attorneys to monitor the settlement since the Court's grant of preliminary approval. *Id.* Ms. Monroe was offered an early opportunity to resolve her claims on an individual basis for a substantial sum, but she declined the offer because of her desire to protect the putative class members by pursuing their claims and obtaining redress for them. *Id.*

Regarding the third inquiry, Class Counsel remain unaware of any conflicting interests Plaintiff has with Class Members and she still has no familial relationship to Class Counsel or any person employed by or known to them. [*Id.* at ¶8.] Ms. Monroe has been, and continues to be, actively involved at every stage of this litigation to advance Class members' claims, protect their interests, and seek appropriate redress for them—a fact confirmed by the lack of ***any*** Class Member objections or exclusion requests which strongly evinces the quality and value of the Settlement. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007).

Plaintiff submits that each prong is satisfied under Rule 23(a)(4)'s adequacy inquiry.

**B.**   ***The Class Satisfies All Requirements of a "Hybrid" Class Under Rule 23(b)(2) and (b)(3).***

In addition to the Rule 23(a) requirements, a party seeking to obtain class certification must demonstrate the action may be maintained under within one or more of three categories established by Rule 23(b). The first two categories, established by Rules 23(b)(1) and 23(b)(2), mainly concern actions for equitable relief, while the third category, established by Rule 23(b)(3), usually involves actions for money damages.

The Court previously certified this case as a "hybrid" class action because the Settlement provides the *entire* Class non-monetary relief (injunctive *and* equitable), which is characteristic of Rule 23(b)(2), and monetary relief to the Subclass which is characteristic of Rule 23(b)(3). Nothing has changed since the Court's grant of preliminary approval.

Although a combination of injunctive, equitable, *and* monetary relief may implicate Class Members' Due Process right to notice, and opt-out, of the pending action because "[s]uch a class action, at least in the relief stage, begins to resemble a 23(b)(3) action, and there has been more concern with protecting the due process rights of the individual class members to ensure they are aware of the opportunity to receive the monetary relief to which they are entitled." *Penson v. Terminal Transp. Co*., 634 F.2d 989, 994 (5th Cir. 1981). The Court avoided due process concerns by directing *all* Class Members—including the Subclass—receive direct mail notice of the Settlement including their right to seek exclusion from, or object to, the Settlement.

**1.   Rule 23(b)(2)—Injunctive & Equitable Relief is Appropriate for the Entire Class.**

Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Id.* at 437. A member of a class certified under Rule 23(b)(2) has no right to opt out of the class, though a district court may mandate such a right pursuant to its discretionary powers under Rule

23. *Penson v. Terminal Transport Co.*, 634 F.2d 989, 993 (5th Cir. 1981).

In this case, Defendants acted on grounds that apply generally to the *entire* Class by mailing Plaintiff and each Class Member standardized form Letters to collect defaulted medical debts owed to CF Medical; those Letters uniformly made allegedly false, deceptive, and misleading limited time "settlement offers" without disclosing the debts were no longer judicially enforceable because the statute of limitations to file a lawsuit had passed.

Plaintiff's complaint alleges Defendants' Letters violate the TDCA. That statute permits injunctive relief and actual damages but, unlike the Subclass Claims—which only arise under the FDCPA—does not provide for recovery of statutory damages. The TDCA provides for a two-year statute of limitations, as opposed to the FDCPA's one-year statute of limitation. Although the FDCPA and TDCA both permit recovery of actual damages those damages (if they exist) are difficult to quantify without individual questions of fact and, therefore, would prove difficult to certify under the predominance prong of Rule 23(b)(3) (*see, infra*).

The Parties' Agreement provides for injunctive relief under the TDCA—namely, the Court's entry of a mandatory injunction requiring Defendants to provide disclosures in future written communications to Texas consumers to disclose whether the debts being collected are time-barred and/or credit reported, and whether they will sue or credit report the debts. Injunctive relief is better suited for class treatment under Rule 23(b)(2).

The Agreement also provides *all* Class Members with valuable equitable relief which is unavailable under the TDCA and FDCPA and, therefore, also better suited for class treatment under Rule 23(b)(2). As of August 28, 2020, Defendants requested deletion of Class Members' negative tradelines from each credit reporting agencies to whom they were reporting Class Members' CF Medical account(s) that are the subject of this Litigation. Additionally, if the Court grants final approval CF Medical is also required to, for each Class Members' account(s): (i) consider the accounts disputed; (ii) permanently waive the entire balance owed; (iii) suppress the

filing/reporting of a 1099-C form; and (iv) never sell, assign, or subject the account(s) to further collection activity. *The total value of Class Members' debt waiver is $41.2 million.*

It is undisputed that Class Members' debts are legitimately owed to CF Medical even if the debts are not legally enforceable. As such, Defendants' non-litigation collection efforts including credit reporting remained possible. Defendants' deletion of Class Members' negative credit reporting tradelines, coupled with permanent debt waiver of Class Members' entire outstanding balances *and* suppressing the filing of a 1099-C form, is relief that has significant value to consumers in today's current economic environment where most creditors have tightened lending standards due to high unemployment rates caused by the COVID-19 pandemic.

### 2. Rule 23(b)(3)—Subclass Claims

Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amchem*, 521 U.S. at 615. For the reasons set forth *infra*, both requirements are satisfied in the present case.

### (i) *Common Questions Predominate Over Individual Issues.*

"Predominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem* at 625. In a settlement-only class action, "the court certifying the class need not examine issues of manageability" and therefore, predominance is not a high standard. *See, e.g., In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 306 (3d Cir. 2005). To meet the predominance requirement, Plaintiff must show that issues "subject to generalized proof and thus applicable to the class as a whole … predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982).

Here, Plaintiff seeks certification of a settlement-only class in which questions of law and fact predominate over questions affecting only individual Class Members—*i.e.*, Defendants

*standardized* collection Letters making limited-time settlement offers to resolve time-barred debts without disclosing they were legally unenforceable and which, if true, violate the FDCPA and TDCA in the same manner. Thus, the predominance factor is satisfied.

### *(ii)    A Class Action is Superior to Other Resolution Methods.*

Rule 23(b)(3) also requires the Court to determine the "class action is superior to other available methods for the fair and efficient adjudication of the controversy."

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617. In "small-stakes cases," class actions suits are the best, and perhaps only, way to proceed. *See, Henry v. Cash Today, Inc*., 199 F.R.D. 566, 573 (S.D. Tex. 2000) (citation omitted). The Fifth Circuit has concluded that pursuing a class action usury claim was "not only superior to other methods, but singularly appropriate for adjudication." *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1108 (5th Cir. 1978), *aff'd*, 445 U.S. 326 (1980).

"Most importantly, the superiority of FDCPA class action claims is apparent in the language of the statute [because] '[t]he language of the FDCPA governing the recovery in class actions is an indication that Congress views the availability of the class action procedure as an integral part of the enforcement regime.'" *Hackler v. Tolteca Enters.*, Civil Action No. SA-18-CV-911-XR, 2019 U.S. Dist. LEXIS 226145, *17 (W.D. Tex. Sep. 9, 2019) quoting *Barnett v. Experian Info. Sols.*, No. Civ.A.2:00CV175, 2004 WL 4032909, at *5 (E.D. Tex. Sept. 30, 2004) and 15 U.S.C. § 1692k(a)(2)(B).

Here, there are 28,569 persons in the Settlement Class, but they have shown little interest in controlling the prosecution of this case likely because each has a very small claim in comparison to prosecuting a lawsuit. This is evidenced by the fact no Class Member objected to, or sought exclusion from, the Settlement. Thus, Rule 23(b)(3)'s superiority element is satisfied.

### C.     The Agreement Is Fair, Reasonable, and Adequate.

Rule 23(e) requires the Court to find the Settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330. The Fifth Circuit adopted a six-factor test—known as the "*Reed* factors"—which are:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense and likely duration of litigation; (3) the stage of the proceedings and the actual amount of discovery completed; (4) the probability of Plaintiffs' success on the merits (or, the factual and legal obstacles prevailing on the merits); (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982).

The Settlement satisfies each of the *Reed* factors, and thus, should be approved. The overarching factor is that the Settlement provides Class Members with substantial more than the maximum relief than could have been awarded had the Parties continued to litigate.

#### (i)     The Settlement Was Not The Product Of Fraud Or Collusion.

Here, the Agreement was negotiated at arm's length for several months including several weeks after a 10-hour mediation in which the Parties personally participated. [*Appx. 2*, ¶¶13-14]. Moreover, the Parties are represented by experienced and capable counsel who recommend its approval and Class Counsel are experienced consumer lawyers who are well qualified to assess the case prospects and negotiate a favorable Class resolution. *Id.* at ¶¶2-6; *Appx. 3*, ¶¶1-5.]

Moreover, Plaintiff did not use the class action procedure to gain a more beneficial settlement for herself. This fact is established by Plaintiff's successful efforts over a year to secure for Class Members valuable equitable relief requiring CF Medical to: (i) consider each Class Members' account(s) disputed; (ii) permanently waive the entire balance owed; (iii) suppress the filing/reporting of a 1099-C form; (iv) never sell, assign, or subject the accounts to further collection activity; and (v) requested deletion of Class Members' negative credit

reporting tradelines. The total value of Class Members' debt waiver is $41.2 million.

Plaintiff also obtained a mandatory injunction requiring Defendants to provide disclosures in future written communications to Texas consumers advising whether the debts being collected are time-barred and/or credit reported, and whether they will sue or credit report the debts. Regarding the Subclass, 492 claimants will each receive a $30.00 direct payment.

### (ii)       *The Complexity, Expense, and Likely Duration of Litigation.*

The second *Reed* factor essentially captures the probable costs, in both time and money, of continuing on the adversarial path. This factor weighs in favor of settlement.

Here, Plaintiff's legal claims were primarily legal in nature but there was no guarantee she would prevail on summary judgment or at trial and, if she had, there was no certainty as to the outcome of any appeal. This action is still in its early stages and, therefore, success for Class Members is less certain than if they proceeded to trial. Although Defendants provided written discovery, additional party and non-party discovery was still being sought including depositions.

Moreover, as a putative class action, complex legal and factual issues would be the subject of contested pretrial motions, including summary judgment and class certification. The class certification decision might lead to an inevitable Rule 26(f) interlocutory appeal, potentially delaying prosecution of the case if a stay pending appeal was granted.

Thus, given the prospect of further protracted litigation, engendering enormous time and monetary expenditure, this factor weighs strongly in favor of approval.

### (iii)      *The Stage of the Proceedings and Amount of Discovery Completed.*

The third *Reed* factor captures the degree of case development class counsel accomplished prior to settlement. Through this lens, courts can determine whether "counsel had an adequate appreciation of the merits of the case before negotiating." *Moore v. Halliburton Co.*, 2004 U.S. Dist. LEXIS 18187, *7 (N.D. Tex. Sept. 9, 2004) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3rd Cir. 2001).

This inquiry has two aspects: factual and legal. Plaintiff acknowledges the Court must consider legal theories and factual situations without the benefit of a fully developed record, but the Supreme Court has warned courts should avoid deciding the merits of a case or resolving unsettled legal questions. *Carson v. American Brands*, 450 U.S. 79, 88, n. 14. (1980). The pertinent question here is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Moore*, 2004 U.S. Dist. LEXIS 18187, *7.

As noted *supra*, the Parties exchanged enough discovery and information to weigh the strengths and weaknesses of their claims and defenses, and accurately determine the damages at issue which, in turn, allowed them to make informed decisions about settlement. Courts regularly approve settlements reached at this or even earlier stages of litigation. *See, e.g., O'Brien v. Brain Research Labs, L.L.C.*, 2012 U.S. Dist. LEXIS 113809, at *51 (D.N.J. Aug. 8, 2012); *Klingensmith v. Max & Erma's Rests., Inc*., Civ. No. 07-318, 2007 U.S. Dist. LEXIS 81029, *4 (W.D. Pa. Oct. 23, 2007). Thus, Plaintiff submits this factor also weighs in favor of approval.

### (iv) Probability of Plaintiff's Success on the Merits and Possible Range of Recovery and Certainty of Damages.

The fourth and fifth *Reed* factors require the Court to consider the factual and legal obstacles to Plaintiff's ability to prevail on the merits and her possible range of recovery. In determining the probability of Plaintiff's success on the merits, the court must compare the terms of the Settlement with the likely rewards the class would have received following a successful trial of the case. *Reed*, 703 F.2d at 172. Courts, however, should not decide the issues or try the case to assess this factor, because, "the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id*. These factors essentially evaluate whether the Settlement represents a good value for a weak case or a poor value for a strong case.

Here, the probability of Plaintiff's success on the merits was uncertain and there was no guarantee Plaintiff would succeed on a Motion for Summary Judgment or at trial, even though Plaintiff felt confident she would prevail. Plaintiff also sought both actual and statutory damages,

(under the FDCPA) and injunctive relief (under the TDCA), for herself and the Settlement Class. Plaintiff secured both forms of relief, but went further and obtained *equitable* relief which is unavailable under both statutory schemes—namely, deletion of Class Members' credit reporting tradelines, and permanent cancellation of their entire account balances without 1099C reporting. The equitable relief obtained is perhaps the most valuable aspect of the Settlement for Class Members in today's economic environment and far better than Plaintiff could have secured from the Defendants at trial. Accordingly, this factor strongly supports approving the Settlement.

> *(v)*      **Opinions of the Participants, Cass Counsel, Class Representative, and Absent Class Members.**

The last *Reed* factor gauges whether the respective opinions of Class Counsel, the Class Representative, and absent Class Members weigh in favor of approving the settlement. It overwhelmingly does. First, the Settling Parties' counsel agree the Settlement is fair, reasonable, and adequate. Second, and more importantly, none of the 27,112 Class Members who received actual notice of the court-approved Notices objected to, or sought exclusion from, the Settlement whereas 492 Subclass Members expressed their approval by returning a claim form to share in the Settlement. The lack of **any** negative Class Member responses strongly evinces the quality and value of the Settlement and supports final approval. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007) (collecting cases); *see also, Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15. (3d Cir. 1993) (silence is "tacit consent" to settlement).

## IV.    PLAINTIFF REQUESTS A REASONABLE INCENTIVE AWARD

Plaintiff also requests the Court's approval of an incentive award in the amount of $5,000. Courts in the Fifth Circuit have recognized and approved incentive awards for class representatives. *See, e.g., Carrabba v. Randalls Food Markets, Inc.*, 191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) (recognizing practice of granting incentive awards).

Under the FDCPA, Plaintiff could have sought actual damages plus *up to* $1,000 in "additional damages" for her individual claim. Instead, she chose to pursue a class action which,

based on the benefit to Class Members, was settled on terms *exceeding* the best possible outcome in a contested case. The case has thus far lasted a little over a year, but Plaintiff stayed the course and undertook the substantial time and effort, as well as placing her name into the public record, as the named plaintiff in a class action lawsuit to seek redress for thousands of Texas residents who never knew they had rights to vindicate or, if they did know, chose not to undertake the time and effort to find an attorney and pursue the claims.

The award to Plaintiff is reasonable and should be approved. *See, In re Lease Oil Antitrust Litig*., 186 F.R.D. 403, 449 (S.D. Tex. 1999) (granting awards of between $1,000 and $10,000); *see also, Varacello v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 258-59 (D.N.J. 2005) (collecting cases); The law recognizes it is appropriate to make modest awards in the range of $1,000 to $20,000 in recognition of the services such plaintiffs perform in a successful class action. *Lease Oil*, *supra* (awards ranging from $1,000 to $10,000). The amount requested here, $5,000, is reasonable and not disproportional to the overall settlement. Moreover, the court-approved notice to Class Members informed them of Plaintiff's intent to seek payment of $5,000, subject to Court approval, for her services on behalf of the Class.

Accordingly, Class Counsel respectfully request the incentive award be approved.

## V.    APPROVING PLAINTIFF'S ATTORNEYS' FEES AND COSTS

### A.    *The FDCPA Mandates Attorneys' Fees & Costs to Successful Plaintiffs.*

Under the FDCPA, a prevailing plaintiff is entitled to "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Having recovered both statutory damages, injunctive relief (and other monetary and equitable relief), this is a successful action. *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996). Further, the Settling Defendants agreed to pay reasonable attorneys' fees and costs treating this as a successful action. [Doc. 39-2, §12.]

The Supreme Court encourages consensual resolution of attorney's fees as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme

Court wrote, "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Id.* at 437; *accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties, should determine the quantum of attorneys' fees). It is widely recognized that fee agreements between litigants are urged. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) *abrogated on other grounds by, Blanchard v. Bergeron*, 489 U.S. 87 (1989) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through class actions, attorneys providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economical for defendants to practice injurious behavior. *See, Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980).

Here, the Parties avoided the possibility of a "second major litigation" by negotiating an agreement concerning Class Counsels' attorney's fees to be awarded, which only occurred *after* they resolved Class Members' relief and other material Settlement terms. [*Appx. 2*, ¶¶13-14.] Thus, the Court need not guess the "market factors" as the Parties, through their able and experienced counsel did so on their own through months of extensive and protracted negotiation.

**B.    *Plaintiff's Reasonable Attorney Fees, Costs, and Expenses.***

The Court is empowered to award reasonable attorneys' fees and nontaxable costs when authorized by law or the class action settlement agreement. Fed. R. Civ. P. 23(h). "An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances." *DeHoyos*, 240 F.R.D. at 322.

An award here is authorized both by law and the Agreement. Furthermore, the Agreement provided Defendants' liability for attorneys' fees and costs, limited to $100,000, to

cover "all fees and costs arising from the Litigation, and which is in addition to, and does not in any way reduce, the Relief to the Settlement Class." [Doc. 39-2, ¶12.]

Nevertheless, "[t]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). The Fifth Circuit allows "district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).

Consistent with the blended approach under *Union Asset*, "the Court will (1) determine the valuation of the benefit received by the claimants and then select an initial benchmark percentage, (2) determine whether the benchmark should be adjusted based on the application of the *Johnson* factors to the particular circumstances of this case, and (3) conduct a rough lodestar analysis to cross-check the reasonableness of the percentage fee award." *In re Vioxx Prod. Liab. Litig.*, 2013 U.S. Dist. LEXIS 133462, *3 (E.D. La. Sep. 17, 2013) (internal quotes omitted). These three topics are discussed in Parts C, D, and E, *infra*.

The FDCPA's remedial purposes should also be considered when evaluating the reasonableness of fees. "Fees are not unreasonable simply because they greatly exceed the damages awarded. 'Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law.'" *Brown v. Phx. Recovery Grp.*, No. 3:09-CV-1319-D, 2009 U.S. Dist. LEXIS 118663, *1 (N.D. Tex. Dec. 21, 2009) (quoting *Tolentino v. Friedman,* 46 F.3d 645, 653 (7th Cir. 1995)). "Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated."

*Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT&T Bell Labs.*, 842 F.2d 1436, 1449 (3d Cir. 1988).

### C.    Valuation of the Benefit.

The FDCPA provides that a class may recover statutory damages up to 1% of the debt collector's net worth, or $500,000, whichever is less. 15 U.S.C. § 1692k(a)(2)(B)(ii). Here, Plaintiff negotiated Defendants' payment of $100,000 towards the Subclass's statutory damages—an amount which disputably is *more than* 1% of AssetCare's net worth. Plaintiff also obtained injunctive relief under the TDCA. Most importantly, Plaintiff secured very valuable *equitable* relief not recoverable under the TDCA or FDCPA—specifically *permanent* cancellation of Class Members' entire collection accounts (valued at $42 million), no 1099-C reporting of the debt cancellation, and deletion of Class Members' credit reporting tradelines.

Thus, the results obtained by the Settlement exceed the maximum possible recovery against the Defendants had this case been a contested matter.

### D.    Johnson Factors.

#### (i)    The time and labor required.

The work performed over more than year included: an extensive pre-suit investigation of the facts, the Defendants' related lawsuits, background and finances; communications with Plaintiff, the adversary, and the Court; drafting the Complaint, and significant discovery practice; research and monitoring of other related pending litigation; mediation, and negotiating and drafting settlement documents over months; drafting the Motion for Preliminary Approval; communicating with Class Members after class notice; drafting this Motion; attendance at the final approval hearing and, if the Court approves the Settlement, overseeing its full execution and disbursements to Subclass Members and fielding their related inquiries. [*App. 2*, ¶16.] Presently, Class Counsel collectively expended 227.70 hours over nearly 17 months. *Id.* at ¶¶12-13.

> **(ii)**      ***The novelty and difficulty of the questions.***

At the initial hearing, the Court expressed some familiarity with the novelty and difficulty of the questions raised. However, Defendants contended the Fifth Circuit's decision in *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016) and other decisions did not resolve their liability because the letter Plaintiff received was not the first one mailed.

> **(iii)**      ***The skill required to perform the legal services properly.***

The effective practice under the FDCPA has become specialized. The Act sets forth a regulatory regime for the conduct of debt collectors who collect consumer debts. The need to fully understand the scope of the Act, to be well-versed in the ongoing caselaw, and to undertake the risks inherent in pursuing contingent fees under a fee-shifting statute results in few attorneys who regularly handle FDCPA claims for consumers.

> **(iv)**      ***The preclusion of other employment by the attorneys.***

This is not a factor here.

> **(v)**      ***The customary fee.***

After deducting costs of $2,757.50, the requested fee under the Settlement terms results in a $427.06 blended hourly rate. [*Appx. 2*, ¶¶16-18.] That effective rate is significantly less than the court-approved rates of Messrs. Thomasson and Greene, and slightly more than the rates Mrs. Busby and Mr. Ciment have been approved by various courts and seek here, in class and *non*-class cases in Texas and elsewhere. [*Id.* at ¶¶20-23 (approving Thomasson at $525.00/hr, Greene at $575.00/hr, and Busby at $400.00/hr); *Appx. 3*, ¶8 (Ciment at $400.00/hr)].

> **(vi)**      ***Whether the fee is fixed or contingent.***

The fee is contingent. More specifically, the FDCPA and TDCA are fee-shifting statutes when a plaintiff proves a defendant's liability. Here, Class Counsel agreed they would only receive a fee if the case was successful. [*Appx. 2* ¶¶25-26.]

> **(vii)**      ***Time limitation imposed by the client or the circumstances.***

This is not a factor here.

*(viii)*      **The amount involved and the results obtained.**

This factor is addressed above under Part C., *supra*, *Valuation of the Benefit*.

*(ix)*      **The experience, reputation, and ability of the attorneys.**

Class Counsels' declarations set forth their experience, reputation, and ability.

*(x)*      **The undesirability of the case.**

This is not a factor here.

*(xi)*      **The length and nature of the attorney-client relationship.**

This is not a factor here.

*(xii)*      **Awards in similar cases.**

Here, the 492 Subclass Members who returned a claim form will each receive a direct payment of $30.00 in statutory damages, and all Class Members will receive an approximate collective amount of $42 million in account credits—without 1099C reporting—along with other *equitable* and injunctive relief for which Class Counsel seek approval of a combined $100,000 award for fees, expenses, and costs. This is consistent with other cases within this Circuit.

In *Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002) the court approved a class settlement of an FDCPA case where the class received $8,000 (60% of the maximum award) and the court approved agreed-upon attorneys' fees of $25,000. In *Cope*¸ there were 4,925 class members, 672 (or 13.6%) of whom returned claimed forms and received $11.90.

The result here is better than *Cope* for several reasons. First, the Subclass Recovery is disputably 200% of the maximum statutory damage recovery while *Cope* was a 60% recovery. Also, the total recovery here of $100,000 and $30.00 payments—not including account balance cancellation (approx. $42 million value)—is substantially better than the $8,000 and $11.90 payments in *Cope*. Finally, each Class Member will receive deletion of Defendants' negative credit reporting tradelines, no 1099-C reporting of their cancelled debts, and injunctive relief. That better result, coupled with *Cope* being decided nearly two decades ago, amply supports the reasonableness of $100,000 in this case today.

### E.    *Lodestar Cross-Check.*

Under the lodestar method "a court must first calculate the 'lodestar' amount by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Moench v. Marquette Transportation Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 596 (5th Cir. 2016) (internal quotes omitted). When determining the reasonableness of hours, no reduction should be made for an unsuccessful stage of the litigation so long as it was a step to ultimate victory. *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 626 (W.D. Tex. 2015). "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market." *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000).

"The lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000). And, the Supreme Court has warned, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. The blended method avoids the unnecessary burden of the painstaking analysis called for under a pure lodestar approach.

The *adjusted* lodestar fee here is $93,230.00 based on the time and rates of Class Counsel: Andrew T. Thomasson (91.10 hrs. x $550); Katelyn B. Busby (82.55 hrs. x $425); Francis R. Greene (15.90 hrs x $575); and Daniel J. Ciment (32.2 hrs. x $425). [*Appx. 2*, ¶17; *Appx. 3*, ¶8.] Class Counsels' declarations establish their experience [*Appx. 2*, ¶¶1-6; *Appx. 3*, ¶¶1-5] and reasonableness of their rates and time expended [*Appx. 2*, ¶¶15-28; *Appx. 3*, ¶¶1-8].

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant her motion and

enter a Final Approval Order including an award of Class Counsels' fees and costs

Respectfully submitted,

*s/ Andrew T. Thomasson*

Dated: March 10, 2021
Andrew T. Thomasson, Attorney-in-Charge
  NJ Bar No. 048362011; SDTX No. 2347873
Katelyn B. Busby
  AR Bar No. 2014133; SDTX No. 3466595
THOMASSON PLLC
350 Springfield Avenue, Suite 200
Summit, NJ 07901
Telephone: (973) 312-0774
Facsimile:  (973) 559-5579
E-Mail: Andrew@Thomassonpllc.com
E-Mail: Katelyn@Thomassonpllc.com

Daniel J. Ciment
  TX Bar No. 24042581
CIMENT LAW FIRM, PLLC
24275 Katy Freeway, Suite 400
Katy, TX 77494
Telephone: (833) 663-3289
E-Mail: Daniel@CimentLawFirm.com

*Attorneys for Plaintiff, Catherine Monroe, and*
*the Certified Class*

## CERTIFICATE OF CONFERENCE

I, Andrew T. Thomasson, certify that on March 9, 2021, I conferred with Defendants'
counsels, Whitney L. White and James M. Schultz, who confirmed Defendants do not oppose
Plaintiff's Motion for Final Approval of the Parties' Class Settlement Agreement.

*s/ Andrew T. Thomasson*
Andrew T. Thomasson